EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RICARDO RODRÍGUEZ GONZÁLEZ, acusado y apelante.

*Número:* CR-70-82 *Resuelto:* 7 de mayo de 1971

*Enrique Miranda Merced,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Rurico E. Rivera Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El fiscal formuló acusaciones contra el apelante por infracción a los Art. 6 y 8 de la Ley de Armas, cometidas en Ponce el día 5 de junio de 1968.

Un jurado le declaró culpable de la infracción al Art. 8 y fue sentenciado a cumplir de 2 a 4 años de presidio. Fue igualmente declarado culpable por tribunal de derecho de la infracción al Art. 6 y sentenciado a cumplir 18 meses de cárcel.

El apelante sostiene en este recurso que (1) la evidencia presentada por el Ministerio Público no establece su culpa-

bilidad en ambos delitos, más allá de duda razonable, (2) fue error declarar sin lugar la moción de absolución perentoria en cuanto a la infracción al Art. 8 (*felony*) y al declarársele culpable de dicho delito a pesar de que la prueba de cargo no estableció fuera de duda razonable que el acusado portase un arma en la vía pública, y (3) no procede sostener la sentencia de 18 meses de cárcel por la infracción al Art. 6 de la Ley de Armas.

Tiene razón el apelante en su primer señalamiento en lo que respecta al veredicto condenatorio en el caso por infracción al Art. 8, lo que hará innecesario considerar el segundo apuntamiento. En cuanto a dicha infracción, y no así en cuanto a la infracción del Art. 6, la prueba de cargo deja de establecer la culpabilidad del apelante, más allá de duda razonable.

Solamente un testigo de cargo declaró sobre el sitio donde ocurrieron los hechos, o sea, donde el acusado portó e hizo disparos con una pistola. Es el testigo Francisco Figueroa Ortiz. Informado éste por su esposa que la señora Aurora Ríos c/p Lola, esposa del acusado, le había chocado su automóvil, él y su hermano se montaron en el vehículo chocado y se dirigieron a la Calle Mayor, hacia el Norte, donde lograron alcanzar a la señora Ríos. Al darle alcance se le pasaron al frente y Francisco le hizo señal de que se detuviera y se alineó al frente de ella, volviendo esta señora a impactar su vehículo por detrás. Allí Francisco Figueroa Ortiz le dijo: "Lola, me chocaste el carro." Ella lo negó y le dijo que hablara con su esposo. Los Hermanos Figueroa se dirigieron a la casa del esposo de doña Lola y ésta los siguió. Al llegar a la casa del apelante en la Bda. Borinquen, Francisco Figueroa lo llamó y éste salió.

Lo que ocurrió luego lo relataremos copiando directamente de la transcripción de la evidencia, ya que la prueba sobre el sitio específico en que se dice el acusado portó ilegalmente una pistola, es bastante confusa. He aquí los únicos pasajes

pertinentes a esta cuestión que extraemos del testimonio de Francisco Figueroa supliendo por nuestra cuenta el énfasis necesario.

"¿Hacia dónde se dirigió usted específicamente?

*Hacia la casa de Richie.*

¿Qué queda dónde?

En la barriada Borinquen.

¿Para la fecha de la ocurrencia de estos hechos vivía en la misma barriada?

Sí, señor.

¿Qué pasó allí?

Yo fui allá, entonces llamé a Richie; él salió, entonces, pués, yo estaba, *me paré en el frente de la casa de frente a la calle y entonces le* dije a Richie que Lola me había chocado el carro, entonces le di un papel que mi hermano me entregó por el camino; un papel donde . . ."

. . . . . . . .

O sea, en el transcurso que

TESTIGO:

yo estaba siguiendo a Lola el hermano mío me dio un papel donde estaban apuntadas las placas del carro de Richie; *llegué a la casa y le dije,* 'tu esposa me chocó el carro y aquí en este papel tengo las placas anotadas por mi hermano'; mi hermano apuntó las placas del carro y le dijo al hermano mío, 'familia y tirándonos'. [Págs. 24–25.]

. . . . . . . .

TESTIGO:

Al decir esas palabras, que la familia tirándose, se metió el papel que yo le había entregado al bolsillo trasero del pantalón; yo le dije, 'necesito el papel por si no arreglas el carro ir a la policía'.

¿Usted le requirió que le devolviera el papel?

*Sí, señor, entonces sacó la pistola . . .*

¿De dónde sacó la pistola?

*De la cintura.*

¿Cómo era esa pistola?

De esas, una pistola de cañón largo negro, alemana.

¿Una pistola de cañón largo, negro, alemana?

Sí, señor.

¿Usted dice que la sacó de dónde?

De la cintura.

¿Qué hizo, si algo, con eso?

¿Cómo dice?

¿Qué hizo con ella?

Bueno, me apuntó con la pistola, entonces con la otra mano me cogió por el cuello, me dio por el cuello, por el lado derecho.

FISCAL RUIZ:

¿Cómo?

TESTIGO:

Me dió con la otra mano.

¿Por dónde?

Por aquí.

¿Por el cuello?

(El testigo hace gesto afirmativo con la cabeza)

¿Qué pasó?

*Al yo ver lo que hizo yo me tiré a la calle,* yo y mi hermano, entonces él con la pistola nos amenazaba, entonces me dijo a mí, este, que yo era inferior a él en cuestión a pelear a los puños, entonces me dijo que si yo quería pelear con él a los puños; entonces yo le iba a conceder eso entonces, cuando me iba a preparar para pelear a los puños se apoderó de un pedazo de palo para darme con él.

¿Quién?

Richie.

¿Qué hizo con la *pistola mientras tanto?*

*Se la dio a Lola.*

¿Ah?

Se la dio a Lola.

FISCAL RUIZ:

¿Qué es la esposa de él?

TESTIGO:

Es la esposa de Richie. Al tirarme con el palo el hermano mío estaba más cerca y le dio por el cuello, por la cabeza y el hermano mío logró esquivar el palo y lo agarró y Richie, como el hermano mío era más fuerte, le mordió el pecho y además le mordió un dedo; entonces en ese término de tiempo que estaba Richie y el hermano mío empatados Lola me tenía a mi apuntado con la pistola.

¿Cómo dice?

Que en ese término de tiempo que estaba Richie empatado con el hermano mío Lola me tenía a mi apuntado con la pistola. Ajá, siga.

Entonces, pués, al ella tenerme a mi apuntado con la pistola y el hermano mío y Richie empatados, Lola iba a darle al hermano mío con la pistola por la cabeza, entonces, había una tabla, *yo agarré la tabla*

TESTIGO:

y le dije a Lola que no se moviera, en eso se detuvo; en ese momento Richie mordió al hermano mío y el hermano mío por el dolor lo soltó, al *soltarlo él se dirigió a Lola quitándole la pistola.*

FISCAL RUIZ:

¿Quién le quitó la pistola a Lola?

Richie, entonces yo y mi hermano corrimos por detrás del carro . . .

Ajá.

. . . que estaba *parado frente al garage de la casa de Richie;* al correr, Richie nos hizo el primer disparo, la primera detonación con el revólver, con la pistola.

¿Ahí le disparó?

Sí, señor.

¿Qué hicieron ustedes?

Al oir las detonaciones corrí por el cerro San Tomás.

¿Y el automóvil?

Lo dejé allí.

¿Qué hizo después de eso?

Bueno, entonces llegué a mi

TESTIGO:

casa y de ahí partí al cuartel; se lo notifiqué al cuartel, entonces quien hizo las gestiones fue el policía Mateo. [Págs. 26 a 30]

. . . . . . . .

FISCAL RUIZ:

¿Testigo, cuando usted recibió el impacto que usted dice, que recibió esos disparos, en qué sitio se encontraba usted?

TESTIGO:

Yo estaba . . . , o sea, cuando estábamos allí que él se dirigió a Lola que *tenía la pistola estábamos frente a la casa, en el callejón.*

¿Era una calle?
*Era la calle ya.*
¿Pasan carros públicos?
Sí, señor.
¿Qué calle es esa allí?
Bueno, por el nombre no la conozco.
Nada más." (Pág. 32.) (Énfasis nuestro.)

No se trata aquí de si una inferencia basada en un hecho probado establece la culpabilidad del acusado. Más bien de lo que se trata es de la interpretación de la declaración de un testigo en aquella parte en que sitúa al acusado-apelante con una pistola en sus manos.

 Parece que en el momento en que el acusado saca la pistola, le apunta con ella a Francisco Figueroa y con la otra mano lo cogió por el cuello y le dio por el cuello, estaban en la casa del apelante pues el testigo declaró que al ver lo que hizo, ". . . yo me tiré a la calle, yo y mi hermano . . . ." Relata entonces el testigo que el apelante lo invitó a pelear a los puños y cuando el testigo se preparaba para pelear a los puños, el acusado se apoderó de un pedazo de palo para darle con él y que mientras tanto, el acusado le había dado la pistola a Lola. ¿Dónde se encontraba Lola cuando el acusado le dio la pistola? No lo dice el testigo. Sí dice que luego se enfrascaron en una pelea el acusado y el hermano del testigo y que cuando el acusado mordió a su hermano, éste lo soltó y aquél se dirigió a Lola quitándole la pistola. Tampoco la prueba señala el sitio donde se encontraba Lola en ese momento. Continúa el testigo relatando que cuando el acusado (Richie) le quitó, la pistola a Lola, él y su hermano corrieron por detrás del carro que estaba parado frente al garaje de la casa de Richie y que al correr Richie les hizo el primer disparo. El Fiscal le pregunta al testigo que en que sitio él se encontraba cuando Richie le hizo los disparos, contestando "Yo estaba . . . , o sea cuando estábamos allí que él se dirigió a Lola que tenía la pistola

*estábamos* frente a la casa, en el callejón. . . . Era la calle ya." ¿Quiénes estaban en el callejón, los hermanos Figueroa solamente o éstos y también el acusado? El testimonio puede interpretarse en el sentido de que eran todos y que por lo tanto el acusado portó la pistola en una vía pública; pero con la misma fuerza de persuasión puede interpretarse que eran los hermanos Figueroa únicamente los que estaban en la vía pública y no así el acusado, quien pudo haberle hecho los disparos desde el perímetro de su propiedad, en cuyo caso no habría incurrido en la portación ilegal de una arma de fuego. Estando sujeto el testimonio que comentamos a dos interpretaciones que pueden ser igualmente ciertas, adoptar la perjudicial al acusado, y rechazar la que le es favorable ciertamente no determina su culpabilidad más allá de duda razonable. Por esa razón no debe prevalecer el fallo en su contra. La prueba de defensa en nada ayudó a fortalecer en ese extremo la de cargo.

La prueba es suficiente en derecho para sostener el fallo en el caso por infracción al Art. 6 de Armas y no debe ser alterado. Sin embargo, al igual que lo hicimos en el caso de *Pueblo* v. *Ángel Sánchez Medina*, Cr-69-139, Sentencia de 2 de mayo de 1970, aplicaremos las disposiciones de las Leyes Núms. 59 y 61 de 23 de junio de 1969 y rebajaremos la pena a 1 año de cárcel.

Por los motivos expuestos *se revocará la sentencia en el caso por violación al Art. 8 de la Ley de Armas, y se absolverá al acusado-apelante y en cuanto a la infracción al Art. 6 de dicha ley, se modificará la sentencia apelada reduciéndola a 1 año de cárcel y así modificada será confirmada.*